UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JENNIFER CLARKE | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. 1:13-CV-00555 |
| BRIDGE CITY INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| MIKE KING, INDIVIDUALLY, | § | |
| RICHARD BRIGGS, | § | |
| INDIVIDUALLY, KEITH | § | |
| JONES, INDIVIDUALLY, | § | |
| J. DAKOTA PAYNE, | § | |
| INDIVIDUALLY, | § | |
| OFFICER JONATHON D. | § | |
| PAYNE, INDIVIDUALLY, AND | § | |
| ORANGE COUNTY | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Jennifer Clarke, files Plaintiff's First Amended Complaint,

complaining of Bridge City Independent School District, Mike King,

Individually, Richard Briggs, Individually, Keith Jones, Individually, J.

Dakota Payne, Individually, Officer Jonathon D. Payne, Individually, and

Orange County (for misconduct by the Orange County Sheriff Department

and the Orange County District Attorney's Office) (hereinafter "Orange

County"), Defendants, and for a cause of action would show the following.

PARTIES

1.      Plaintiff Jennifer Clarke, is an individual residing in Orange County, Texas and is appearing in court through her attorney of record.

2.      Defendant Bridge City Independent School District can be served with process through its Superintendent Mike King, at 1031 W. Roundbunch Rd, Bridge City, Texas 77611.

3.      Defendant Superintendent Mike King, Individually, can be served with process at the administrative office of Bridge City Independent School District, at 1031 W. Roundbunch Rd., Bridge City, Texas 77611.

4.      Defendant Principal Richard Briggs, Individually, can be served at Bridge City High School, 2690 Texas Avenue, Bridge City, Texas 77611.

5.      Defendant Assistant Principal Keith Jones, Individually, can be served at Bridge City High School, 2690 Texas Avenue, Bridge City, Texas 77611.

6.      Defendant J. Dakota Payne, Individually, (Dakota Payne, aged 19, had reached the age of majority at the time he perpetrated the misconduct at issue in this case), may be served at his place of residence, 1169 Arthur, Bridge City, Texas 77611.

2

7.     Defendant Orange County Sheriff Deputy Jonathon D. Payne, Individually can be served at his place of residence at 1169 Arthur, Bridge City, Texas 77611.

8.     Defendant, Orange County, can be served through the Honorable Judge Carl Thibodeaux, at 123 South 6th Street, Orange, Texas 77630.

JURISDICTION AND VENUE

9.     This Court has jurisdiction over the Parties, the subject matter and the causes of action pursuant to federal question jurisdiction. 28 U.S.C.§ 1331. This Court also has jurisdiction over the pendent Texas state law claims. Venue is appropriate in this District and Division of Federal Court.

BACKGROUND FACTS

10.     Plaintiff, Jennifer Clarke is a certified Texas teacher who was employed by the Bridge City Independent School District ("BCISD") from 2010-2013. She taught in the English department and also served as a coach and sponsor for UIL speech and debate activities.

11.     Defendant Dakota Payne had been Plaintiff Clarke's student the 1st semester of his sophomore year. He had persistent anger management problems and required persistent one-on-one assistance to help him pass.

Plaintiff Clarke communicated with his parents regularly, and his mother informed her that she had simply "given up" on him. Plaintiff Clarke continued to work with Dakota Payne trying to help him pass, and succeeded in the 3rd marking period before her teaching assignment was changed due to another teacher retiring. Additionally, during his sophomore school year, Dakota Payne had to be stopped from attacking a female student with a desk when the student asked him to stop disrupting the rest of the class. He was sent to the principal for this action. Defendant Dakota Payne has been in many situations where he has exhibited threatening behavior and displayed his intent to harm fellow classmates and teachers.

12.    Defendants BCISD, Richard Briggs, Keith Jones, and Mike King had actual knowledge of Defendant Dakota Payne's threatening and assaultive behavior, but these Defendants refused to place Dakota Payne into an alternative education program.  Defendants BCISD, Mike King, Richard Briggs, and Keith Jones, therefore, violated Texas Education Code § 37.001 et seq., which required putting Defendant Dakota Payne in a discipline alternative education program. Although these Defendants had actual notice of the dangerous propensities of Defendant Dakota Payne,

these Defendants were deliberately indifferent regarding his dangerous propensities and his resulting harassment of Plaintiff, discussed below.

13.     Jennifer Clarke had Defendant Dakota Payne as a student again for the 2012-2013 school year, his senior year. While Clarke maintained a positive relationship with him and worked with him one-on-one, his work ethic had not changed, and neither had his problem dealing with his anger. Plaintiff Clarke wrote him up on more than one occasion for his angry, verbal outbursts in class, as well as his disrespectful and confrontational behavior toward her. Despite the write-ups, Defendant Dakota Payne did not receive any discipline or consequences, and he was never forced to follow through with any proposed consequences. Dakota Payne, therefore, consistently bragged that he was "above the rules and no one can touch" him.

14.     Despite communications sent home to his parents about his behavior, Mrs. Clarke did not receive a response. She initiated a one-on-one conference with Defendant Dakota Payne and with Brian Landry, his school counselor, wherein Plaintiff Clarke had to set down new ground rules for Dakota Payne in her class. Plaintiff explained to him that anymore outbursts would result in an automatic write up. Mr. Landry was

present for the entire conversation, and Plaintiff made Defendant Keith Jones aware of the conference.

15.    Subsequent to that time, Dakota Payne approached Mrs. Clarke and demanded that Plaintiff stop contacting his parents and informing them of his grades, as she was doing in accordance with BCISD policy. BCISD also has a policy of mandatory tutoring for all students who are not passing.  Dakota Payne had the privilege of leaving school early, even though the administration had stated that students who were unable to fulfill their academic obligations would be stripped of this privilege. BCISD, however, permitted Defendant Dakota Payne to keep his privileges, and therefore, Plaintiff Clarke assigned Dakota to mandatory morning tutorials in an effort to accommodate his schedule. He refused to come more than one day a week, and so Clarke asked that he at least come on Tuesdays. He was very verbal about his resentment of this requirement. He initially came, though his participation was limited, mostly due to lack of reading, and lack of interest in working on the assignments. Ultimately, he stopped coming to tutorials all together and told Clarke there was nothing she could do about it. He was also angry that Clarke would not simply pass him in spite of him not turning work

in. He indicated to her that many other BCISD teachers do this, and he expected her to do the same.

16.     On or about April 9, 2013, Minor Student, C.R. reported to Plaintiff Clarke that he heard Defendant Dakota Payne say in his second period class "I am going to cut that bitch" in reference to Clarke. Plaintiff Clarke wrote the situation up and turned it in to the Defendant Briggs, Principal at BCISD administration.  Students who participate in a threat against an educator are required to have serious consequences. The governing body over education, the Texas Education Agency (TEA), has a specific provision that sets forth the mandatory process for dealing with these situations. Additionally, the TEA has linked these provisions with the Texas Penal Code provisions. According to the TEA, "a student shall be removed from class and placed in a disciplinary alternative education program under Section 37.008 if the student engages in conduct on or off of school property that contains the elements of the offense of retaliation under Section 36.06, Penal Code, against any school employee." The Texas Penal Code Section 36.06, applies to Defendant Dakota Payne's behavior as outlined above, and states as follows: "(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by

an unlawful act: (1)  in retaliation for or on account of the service or status of another as a: (A) public servant, witness, prospective witness, or informant; or (B) person who has reported or who the actor knows intends to report the occurrence of a crime;  or (2)  to prevent or delay the service of another as a: (A)  public servant, witness, prospective witness, or informant." The details of these violations are outlined therein. The TEA further defines consequences and actions consisting of terroristic threat: "4. Terroristic Threat (Action Reason Code 26) - Under Texas Penal Code Section 22.07, a person commits an offense if he threatens to commit any offense involving violence to any person or property with the intent to: (b) place any person in fear of imminent serious bodily injury; or (c) prevent or interrupt the occupation or use of a building; room; place of assemble; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place" (Appendix E PEIMS Data). And according to the Texas Penal Code, in line with the TEA's definitions, "§ 22.07. TERRORISTIC THREAT.  (a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: (2) place any person in fear of imminent serious bodily injury; (3)  prevent or interrupt the

8

occupation or use of a building, room, place of assembly, place to which the public has access, place of employment or occupation, aircraft, automobile, or other form of conveyance, or other public place;. . .(6) influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state. (b) An offense under Subsection (a)(1) is a Class B misdemeanor. (c) An offense under Subsection (a)(2) is a Class B misdemeanor, except that the offense is a Class A misdemeanor if the offense: (1) is committed against a member of the person's family or household or otherwise constitutes family violence; or (2) is committed against a public servant."

17.   Defendant Dakota Payne's threat also violates BCISD's adopted Student Code of Conduct which states: "A student is participating in misconduct over which the school has disciplinary authority if he or she participates in 'engaging in oral or written threats to cause harm or bodily injury (see definitions) to another student, District employee, official, or volunteer, or school property . . . ' (9)."

18.   During the evening of April 9, 2013, the night of Open House, Glenn Procella, assistant principal, and Brian Landry, school counselor, made regular rounds to check Plaintiff's safety and outfitted her with a radio.

Mr. Procella noted Plaintiff Clarke was "jumpy" due to Plaintiff's discomfort and fear at this point. The next day, April 10, 2013, Plaintiff Clarke followed up with Richard Briggs and Keith Jones, Defendants. Briggs and Jones said Defendant Dakota Payne denied the incident, so no further action would be taken. Plaintiff Clarke was shaken and upset by this, so she requested a substitute for the rest of the day, and Plaintiff went home.

19.    On or about April 11, 2013, Defendant, Principal Richard Briggs informed Mrs. Clarke that if it could be proven that Defendant Dakota Payne made a terroristic threat, consequences would occur. Defendant Briggs also stated, however, that he and Defendant Jones were refusing to interview any witnesses, using the spurious excuse of "they could be lying." Their actions were in direct violation of the Texas Education Code 11.202 section 4. Defendant Briggs' refusal to investigate and his excuses and delays are also in violation of Texas Education Code 11.171 and Plaintiff's 5th Amendment Due Process Rights.

20.    On or about April 12, 2013, Dakota Payne stated in front of his class to Mrs. Clarke that he knew where she lived and stated her street name in a further attempt to intimidate her. At this point, Clarke felt very

uncomfortable and reasonably believed in good faith that she was in physical danger. Clarke informed the Principal Defendants Jones and Briggs of Dakota Payne's statements immediately after class.  Still, the school administration did nothing, in violation of Texas Education Codes 11.202 and 11.171 and Plaintiff's 5th Amendment Due Process rights.

21.    On or about April 15, 2013, Dakota Payne began to make a mockery of the situation by raising his hand and telling Mrs. Clarke that other students were threatening to harm him and asking that she write them up. These actions were part of his efforts to further intimidate and harass Mrs. Clarke. Upon reporting this incident, Defendant Briggs informed Mrs. Clarke her only option was to formally request to have him removed from her classroom. Plaintiff Clarke immediately requested to have Defendant Dakota Payne removed from her classroom due to his misbehavior discussed above, and due to his sharing of the information about the situation and his influence over the other students as well as his behavior toward Mrs. Clarke, all of which were interfering with her ability to effectively teach in her classroom. According to page 14 of the Student Code of Conduct of Defendant BCISD, a teacher may have a student removed from their classroom if his conduct "requires or permits DAEP

placement or expulsion under the Texas Education Code." Further, according to the policy, there are four options for placement: "(1) another appropriate classroom, (2) in-school suspension, (3) out-of-school suspension, or (4) DAEP."

22.     Defendants BCISD, Mike King, Richard Briggs, and Keith Jones , however, breached the BCISD policy and the Texas Education Code 37.002, which provides: "(c)  If a teacher removes a student from class under Subsection (b), the principal may place the student into another appropriate classroom, into in-school suspension, or into a disciplinary alternative education program as provided by Section 37.008." These Defendants further violated the Texas Education Code Section 37.006 "(a) A student shall be removed from class and placed in a disciplinary alternative education program as provided by Texas Education Code Section 37.008 if the student: (1)  "engages in conduct involving a public school that contains the elements of the offense of false alarm or report under Section 42.06, Penal Code, or terroristic threat under Section 22.07, Penal Code." The Texas Education Code further states: "Sec. 37.0081. EXPULSION AND PLACEMENT OF CERTAIN STUDENTS IN ALTERNATIVE SETTINGS. (a)   Subject to Subsection (h), but

notwithstanding any other provision of this subchapter, the board of trustees of a school district, or the board's designee, after an opportunity for a hearing may expel a student and elect to place the student in an alternative setting as provided by Subsection (a-1) if: (2) the board or the board's designee determines that the student's presence in the regular classroom: (A) threatens the safety of other students or teachers." These actions by Defendants Richard Briggs, Keith Jones, Mike King, and BCISD also violated Plaintiff's 5th Amendment Due Process rights.

23.    On or about April 15 2013, Plaintiff Clarke also went to Defendants Briggs and Jones to obtain more necessary information about the progress of any investigation into Dakota Payne's threats and harassment. They informed Clarke that none of the students' names she had given them as potential witnesses to the threat had been interviewed. Mr. Briggs' excuse was to tell Clarke again that "they could be lying." Further, these administrators had accepted Dakota Payne's denial as the truth. Clarke was totally unsupported by the school administration, which flagrantly violated all applicable rules and governing standards. Plaintiff Clarke went to Defendant Jones and again requested that he at least question the student who initially reported Dakota Payne's threats in order to confirm

whether or not the threat had been made. Upon locating the student while in the presence of Defendant Jones, Clarke insisted that he conduct the interview. Defendant Jones did as Clarke asked, but Jones still insisted it was a "he said/he said" issue.  Defendant Jones did not follow up with any additional interviews, and as a result, Defendant Dakota Payne faced no consequences whatsoever. Plaintiff Clarke warned the administration that its failure to provide Dakota Payne with consequences in accordance with BCISD Policy, the Texas Education Code, and the Texas Penal Code would only make the problem worse, because Defendant Dakota Payne was braggadociously telling other students all about these events and his lack of consequences. Defendant Briggs, however, simply replied to Mrs. Clarke with "I cannot control what he says."  Defendants Briggs and Jones actions in this regard violated Texas Education Codes 11.202, 11.171, and Plaintiff's 5th Amendment Due Process rights.

24.     Defendant Dakota Payne was removed from Mrs. Clarke's classroom the following week; however he remained on her classroom attendance roster, and she was given no information as to his whereabouts. Clarke asked Defendant Jones about where to send his work, and he simply told her to send it to him. When she asked that it be returned so she could

grade and enter it, she received no response. She did not know when or if Dakota Payne was present or absent, and Clarke was receiving no communication as to how to handle the situation. It was not until she marked him absent that the school attendance clerk informed her that he was no longer enrolled in English. The BCISD policy provides there should have been a meeting between administrators, Dakota Payne's parents, Clarke and Dakota Payne. The school administration refused to convene this meeting. Dakota Payne was ineligible to graduate high school due to his failure to turn in his work. According to the Texas Education Code and BCISD's Student Code of Conduct, Dakota Payne should have been placed in DAEP for his continuing actions against Clarke. As stated by Clarke's union representative, Mr. Larson, Defendant Deputy Jonathon D. Payne, strongly insisted to Defendants BCISD, Briggs, Jones, and King that his son walk across the stage at graduation, which was contrary to the BCISD policy and the ethical application of the grading process.  Defendant Deputy Payne insisted Defendants BCISD, Briggs, Jones, and King circumvent these rules and provide special treatment exclusively for his son, who had not earned the right to graduate. Defendant Deputy Payne also insisted the Defendants BCISD, Briggs, Jones, and King exempt

Defendant Dakota Payne from BCISD's Code of Conduct which mandatorily required barring Dakota Payne from participating in school-sponsored activities due to his numerous violations outlined on page 13 of the Student Code of Conduct, including participation in any school-sponsored activity such as the graduation ceremonies. Although Dakota Payne was not entitled to graduate, Defendants BCISD, Briggs, Jones, and King gave him a privilege not given to other students in the same or similar academic circumstance. The school administrators violated their own policies in addition to statutes and laws, and BCISD simply removed Dakota Payne from the English curriculum when he should have completed the curriculum in DAEP. Instead, these administrators placed him on a credit recovery program in violation of the Student Code of Conduct and the Texas Education Code (outlined above), thereby giving him the opportunity to gain his credits through an alternative route. By these actions, these same school administrators essentially rewarded Dakota Payne, and allowed him the opportunity to walk across the stage at graduation, which he did not earn. On or about April 16, 2013, Student J.S. approached Mrs. Clarke and told her that he could not believe that Dakota Payne made the threats against her to get out of her class. Dakota

16

Payne told Student J.S., that his father, Defendant Deputy Payne, "went to the school and took care of the situation."

25.    Belatedly, in late April, Defendant Briggs decided to put in place an in-house directive that Defendant Dakota Payne was to stay away from Clarke at all times. Defendant Dakota Payne did not follow this directive, and the school administration did nothing in response. In three specific instances, Defendant Dakota Payne intentionally placed himself near Plaintiff. Clarke worked in the English hall, and despite being removed from the English curriculum, Dakota Payne was reportedly loitering in the English hall on more than one occasion. Additionally, when Clarke had to have her classes in the library, Dakota Payne placed himself directly outside the doors to the library making it impossible for Clarke to avoid contact with him. Clarke requested that Defendant Briggs instruct Dakota Payne to go straight to his classes for the remainder of the week while she was in the library. Dakota Payne complied for one day, and then placed himself right back at the library entrance the next day. Plaintiff Clarke reported this to the BCISD administration through Defendants Briggs and Jones, who did nothing, despite Defendant Briggs' representation that if Dakota Payne defied this directive, then the school

would institute consequences. This disciplinary measure, therefore, was not monitored or enforced. Despite having no English class, which occured in the hall Plaintiff Clarke taught in, students reported that Defendant Dakota Payne was in the English hall several times. Instead of a consequence for Defendant Dakota Payne, however, Plaintiff Clarke is the only one who suffered consequences of fear and trauma. She had to stay in her room with the door locked at all times, while Dakota Payne essentially stalked her and suffered no consequences, which again violated the Student Code of Conduct which provides that a student engaging in misconduct must be subject to disciplinary authority if the student participates in "Being insubordinate or otherwise failing to comply with lawful directives given by school personnel . . . [and] loitering in unauthorized areas" (BCISD Student Code of Conduct 12-13). This directive, no monitoring, and certainly no enforcement by BCISD, Briggs and Jones, made it clear there was offered no safety or security for Clarke in the course and scope of her employment.

26.    Defendant Briggs required a meeting with Mrs. Clarke on or about April 26, 2013,  since she filed a grievance within BCISD about the administration's failure to handle the situation in accordance with the

Texas Education Code, BCISD's Student Code of Conduct, and the Texas Penal Code. Defendant Briggs insisted he made a "judgment call" to do nothing at all to remedy this increasing harassment. Defendant Briggs' intentional inaction violated (1) the Texas Education Code, (2) BCISD's Student Code of Conduct, (3) the Texas Penal Code §39.02 Abuse of Official Capacity, § 39.03 Official Oppression, (4) Texas Penal Code § 38.15 Interference with Public Duties, and (5) Plaintiff's 5th Amendment Due Process rights due to (a) the lack of any competent investigation, and (b) the Texas Education Code required that Dakota Payne be placed in DAEP, which Defendant refused to do. Plaintiff yet again reminded Defendant Briggs of all the reports Clarke made about Defendant Dakota Payne's repeated threats and intimidating behaviors. Defendant Briggs promised again to Clarke he would investigate this harassment, but Briggs never did, thereby violating the multiple clear standards of conduct (set forth above) that Defendant Briggs was aware of.

27.    Shortly after Defendant Dakota Payne was questioned about the incident, students began asking Mrs. Clarke questions and telling Mrs. Clarke about Defendant Dakota Payne's consistent bragging and attempts to keep the situation stirred up. Some students were upset and some

19

students were challenging her. Clarke tried counseling students and correcting the behaviors at first, but as their knowledge of these incidents grew, these students became more disruptive. As a result, Plaintiff began dismissing the statements and advising students to go to Defendant Jones. Additionally, students began reporting they saw Defendant Dakota Payne trolling the English hall where Clarke taught, and Dakota Payne approached students and told them not to talk to Defendant Jones or to the campus police. Plaintiff Clarke referred all of these students to the administration and to the campus police. Clarke repeatedly requested assistance, and repeatedly sent witnesses to the appropriate authorities within BCISD, but Defendants Jones and Briggs repeatedly denied Plaintiff's requests for help, in violation of the both Texas Education Code Sections 11.202 and 11.171 and Plaintiff's 5th Amendment Due Process rights.

28.   In addition to denying Plaintiff's requests for assistance, the administrators significantly interfered in Clarke's attempts to seek help from other avenues. Plaintiff Clarke contacted the TCTA, Texas Teachers Union, for assistance. Her representative, Dohn Larson, suggested Clarke contact the police, but when Plaintiff explained that the student's father

was a Sheriff's Deputy, Mr. Larson suggested Clarke contact the Orange County District Attorney (DA). Plaintiff Clarke did so, and the DA gave Mrs. Clarke the name of a detective, Brittany Hilton, with Bridge City Police Department, whom Plaintiff Clarke called twice. On the second phone call, Det. Hilton relayed through the person who answered the call that she would not speak to Clarke. Clarke then went back to the BCISD administration, and Defendants BCISD, and Individual Defendants Briggs and Jones still refused to act. Plaintiff then scheduled a time to meet with campus police officer, George Navarro, who was not available when Clarke tried to meet with him. Clarke asked the school counselor, Brian Landry, and principal, Defendant Keith Jones, to try to reach Officer Navarro on his cell phone or the radio, but Jones refused to contact Officer Navarro, despite there being a scheduled meeting time. After that, Plaintiff sent an email to the administration explaining that she had not been able to obtain any assistance to secure her safety. The next day, the campus police officer, Mike Bean, took Clarke's statement.

29.    Officer Bean, the BCISD campus police officer, initiated an investigation. Officer Navarro took the lead. Officer Navarro, who is also friends Defendant Deputy Jonathon D. Payne, through their roles in law

enforcement, told Mrs. Clarke that he spoke to Dakota's father, Officer Payne. Officer Navarro expressed his frustration that the BCISD administration had not acted, and Navarro also told Clarke she should not pursue this through the BCISD police, because it might result in criminal consequences for Defendant Dakota Payne, which would upset Deputy Jonathon Payne. Officer Navarro took statements of several students from the class where the threats took place, but he took no statements from students who were threatened by Dakota Payne to remain silent and not to speak. Student J.A.S. reported to Mrs. Clarke that his brother, Student J.S., told him that Joshua better not say anything or "Dakota will kick your ass." Later, Student J.A.S. reported that Dakota Payne stopped him in the hall and  threatened him as well. Defendant Dakota Payne told Student J.A.S. not to say anything, which violates Texas Penal Code § 36.05 which states: "(a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding or coerces a witness or prospective witness in an official proceeding: (1)  to testify falsely; (2)  to withhold any testimony, information, document, or thing; . . . (d)  An offense under this section is a state jail felony." Plaintiff Clarke

told Student J.A.S. to report this criminal act to the campus police, but Officer Navarro would not take his statement, in order to satisfy Defendant Deputy Payne's directive to destroy any police investigation about Dakota Payne. Defendant Deputy Payne's interference with the campus police investigation violated Texas Penal Code § 39.02 Abuse of Official Capacity.  In addition to Minor Student, C.R.' statement, Minor Student, B.L. told Officer Navarro that Dakota Payne threatened the Plaintiff. The information was turned over to the Orange County DA. The DA recommended Mrs. Clarke obtain a restraining order.

30.    The harassment did not end with removing Dakota Payne from Clarke's class. Senior students that were friends with Dakota Payne began pushing the limits in Plaintiff's senior classes in a show of solidarity with the Dakota Payne. Dakota Payne had made it very clear with his bragging that Plaintiff's level of authority was limited, and students began to test it. Students cursed at Clarke, defied her, and made up false rumors about her. Many students also refused to work, and would talk over Clarke as she tried to teach. The culmination of this occurred when one of Dakota Payne's friends, Student J.S., made a threat against an administrator in her classroom. Scales made this threat, because he had

23

now learned that making a threat was a way to circumvent the system. He said "I am going to drop Jones the minute I get my diploma." Plaintiff Clarke took this threat seriously, as any reasonable teacher should. Student J.S. had a history of complaining about Defendant Jones. Student J.S. indicated he felt singled out by Jones in his punishments because Defendant Jones always gave him harsher punishments than Jones gave to other students. Student J.S. had repeatedly stated in front of Clarke that he hated Jones, so when Student J.S. made this statement, Clarke felt she would be negligent by not reporting the threat, which Plaintiff did.

31.    The next day, Student J.S. informed Clarke that he was being assigned DAEP, and he would not be allowed to walk across the stage at graduation. When Plaintiff Clarke finished her hall monitor time, she went into class. Class started as normal, but when Clarke began teaching, students started questioning her about Jacob Scale's punishment. Clarke immediately emailed her department head, Cathy Riley, and also Defendant Jones. Clarke asked them to be available during that class period in the future if she needed them. She also went across the hall to another teacher's room to try to collect herself in an attempt to finish out the day. The next day, Plaintiff Clarke found out that Student J.S. had not

received any punishment from the administration, even though the BCISD administration and Defendants Briggs and Jones had actual knowledge this lack of punishment would incite other students against Clarke, to intimidate and harass her further. Clarke also reported this to Defendant Jones, who did nothing in violation of the Texas Education Code, BCISD's Student Code of Conduct, and Plaintiff's 5th Amendment Due Process rights.

32.    During this time, Plaintiff Clarke's union representative was working with the school's representative on a grievance Plaintiff filed for the administration's failure in educational leadership and its failure to investigate violations of the Texas Education Code. Clarke had agreed to extensions on deadlines in the grievance process so long as the BCISD administrators would work effectively toward a conclusion. Even through her union representative, Clarke's requests were denied. When Plaintiff's union representative requested the production of the videos that showed Dakota's hallway interactions with Clarke, the BCISD Administration presented Clarke with an ultimatum.  The district did not want to produce those videos and they wanted Clarke to leave the campus, pay out her contract, and acknowledge that Clarke had fulfilled all of her duties in

exchange for Clarke dropping her official grievance. Plaintiff Clarke asked her union representative about any alternatives, and he told Mrs. Clarke technically they "could put [her] on leave for any number of reasons", which would effectively end her teaching career through no fault of her own. Seeing no other option in preserving her future, Mrs. Clarke agreed to the terms. The school administration, therefore, wrongfully terminated Clarke. Her last day on campus was May 15, 2013. Unbeknownst to Plaintiff at the time, and later confirmed by the TEA, through its representative, Mr. Carasquillo, this agreement barred Mrs. Clarke from seeking relief by the TEA.

33.    Upon learning of his success in removing Mrs. Clarke from campus, Defendant Dakota Payne, entered one of his classes and declared "I got rid of Mrs. Clarke!" Minor Student, B.L., who was recommended by the campus police and the administration to work in conjunction with Bridge City Police due to his honesty and reliability, witnessed this incident which occurred in the same class as the original threat.

34.    Even after leaving campus, the harassment of the Plaintiff did not end. Clarke's family has had to live in fear for their safety and fear of retaliation. Someone tampered with Clarke's property and released her

dogs. Someone intentionally placed doe estrous or fox urine in her car, and the smell cannot be completely removed. Someone loosened the tires on her husband's truck, which could have caused serious injuries. This also resulted in Plaintiff and her husband having to hitchhike in Labelle to get materials to repair the vehicle. Currently, somebody is stalking Plaintiff in a tow-tone white and tan, four-door, heavy-duty pick-up truck by driving by Plaintiff's residence and by repeatedly stopping in front of Plaintiff's home and other threatening actions.

35.    On June 7, 3013, after leaving her home, Clarke turned on to FM 1442. When checking her rearview mirror, she saw a white SUV following too closely in violation of Texas Transportation Code § 545.462. Initially, Plaintiff was concerned that she was simply being followed by a rude driver. Due to debris on FM 1442, she was unable to completely pull to the shoulder, but she did pull over enough to indicate to the driver to go around her; however, the driver continued to follow her at an unsafe distance. Plaintiff became concerned and continued to check her rearview mirror regularly. She was unable to see the license plate of the vehicle, but as Clarke continued to check the vehicle, she saw a police light bar across the top of the windshield and black bars on the front of the vehicle.

27

Clarke tried to move slightly to see the side of the vehicle to determine what law enforcement agency the vehicle was with, but there were no markings. Knowing that Defendant Deputy John Payne was an employee of the Orange County, and being aware of his history of intimidation of school district employees, Clarke was very concerned for her safety. Clarke had good reason to believe Deputy Payne was driving that vehicle. She continued down 1442 and Deputy Payne tailgated Clarke for approximately 11 miles. When Plaintiff reached Crawdad's Convenience Store at the corner of 1442 and I-10, Clarke pulled in to the parking lot in hopes that the police vehicle would continue on. The driver, probably Deputy Payne, followed her in, then turned around behind the store and proceeded back on FM 1442 in the direction where Plaintiff and the vehicle had come. Through her attorney, Clarke reported the incident to the Orange County Sheriff's Department. She followed up by providing evidence from a video camera recording at Crawdad's Convenience Store. Only when Mr. Clarke, Plaintiff's husband, went directly to Sheriff Merritt did this intimidation and harassment subside for a while. All these actions describe in these two paragraphs violated Texas Penal Code § 20.01, by unlawfully restraining Clarke's movements and freedoms, as

28

well as violating Plaintiff's 1st Amendment freedom of association and movement rights, and her 5th Amendment Due Process rights. Moreover, Defendant Deputy Payne, intentionally interfered with the service of process of Clarke's Civil Temporary Restraining Order against Dakota Payne to restrain any more harassment and intimidation by Defendant Dakota Payne. Defendant Deputy Payne made violent and threatening statements to the process server over the phone when service was being attempted, and thus he violated Texas Penal Code § 38.16 which states: "(a) A person commits an offense if he intentionally or knowingly by words or physical action prevents the execution of any process in a civil cause; (b) It is an exception to the application of this section that the actor evaded service of process by avoiding detection; and (c) An offense under this section is a Class C misdemeanor."

36.    Defendant BCISD, Defendant Mike King, and Defendant Richard Briggs, continued to obstruct Clarke after her wrongful discharge or constructive discharge. Despite BCISD's agreement to pay Clarke in full, these Defendants retaliated against her and docked her pay in the month of June, sending her only $62.00. Additionally, these Defendants refused to release documents and records which Plaintiff is entitled to obtain, and

they caused further damage by delaying Plaintiff in her efforts to secure a mortgage to relocate for the safety of her family and her. Despite repeated attempts by Plaintiff's attorney to secure documentation and evidence for purposes of the restraining order proceedings, Defendants BCISD, Defendant King, and Defendant Briggs have not produced the requested documentation in violation of Texas Open Records Act, codified in the Texas Gov't Code Sections 552.101and 552.352(2).  Further, these Defendants destroyed pertinent evidence, despite receiving a written request to preserve the video evidence and to allow Plaintiff to view it. These Defendants viewed the evidence, but they never allowed Plaintiff to view the evidence, and these Defendants informed the Texas Attorney General that they have destroyed the evidence, in violation of Texas Penal Code §37.09 which states: "(a)  A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he: (1)  "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or . . . (c) An offense under Subsection (a) or Subsection (d) (1) is a felony of the third degree; (d)  A person commits an offense if the person (1)  knowing that an offense has been

30

committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense." These Defendants' actions not only violated the Texas Penal Code above, but also violated Plaintiff's 5th Amendment Due Process rights.

37.    Additionally, Defendant BCISD, and Defendant Mike King, have slandered and libeled Plaintiff per se. They falsely told parents that the DA did not even consider criminal charges, because Dakota Payne allegedly did nothing wrong. Defendant King also falsely stated that the law "is on BCISD's side," and Clarke was causing trouble by seeking a criminal investigation. This misconduct violated BCISD's Student Code of Conduct, which states: "Because school discipline is independent of criminal proceedings, disciplinary consequences may not be postponed pending the outcome of any criminal proceeding or affected by the outcome of any criminal proceeding" (p. 5). Then, the DA mysteriously dropped the criminal charges based upon pressure by Defendant Deputy Payne. The DA provided the false excuse for dropping the terroristic threat charge that Dakota Payne's threats were not made directly to

Plaintiff's face. This is not the text in the Texas Penal Code, nor is such a requirement in the governing document for the school district. Further, the DA dropped the retaliation charge against Dakota Payne, claiming falsely that Clarke is not defined as a public servant in her capacity as an educator. As set forth above, the Texas Education Agency directly links the Texas Penal Code outlining offenses against public servants to consequences on campuses for charges of retaliation against educators. According to Texas Penal Code § 1.07, Mrs. Clarke, in her capacity as an educator, is a public servant: "(41) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties: (A) an officer, employee, or agent of government."

38.     Additionally, the DA did not tell Clarke that the DA dropped the criminal charges until after the DA informed Defendant King, the BCISD superintendent. This was improper, and Mrs. Clarke had requested to be updated of all occurrences, under The Texas Constitution, Article 1, Section 1, The Bill of Rights, Sub Section 30 (a)(1) and (b) (1), (3), and (5): "(a) (1) the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process. . .

(b)  On the request of a crime victim, the crime victim has the following rights: (1)  the right to notification of court proceedings; . . .(3)  the right to confer with a representative of the prosecutor's office; . . . and (5)  the right to information about the conviction, sentence, imprisonment, and release of the accused," but the DA told Defendant King that the DA had dropped the criminal charges prior to telling Clarke.  Defendant King also told Mr. and Mrs. Landrum, parents of one of the reporting students, Minor Student, B.L., that because the two reporting students were members of the speech and debate team, this could all be a big joke. King's comments damaged Plaintiff's reputation further. Mr. Bean, the campus police officer, had informed the school administration that the reporting students were not joking.

39.    Defendant Dakota Payne's father, Defendant Deputy Payne, is a former Bridge City Police Officer, who upon information and belief was fired due to violent and unlawful behavior. Deputy Payne is a current employee of the Orange County Sheriff's Department. Defendant Deputy Payne has a long history of intimidation against school administrators and others to halt any school discipline or consequences against his son, Dakota Payne. When Dakota Payne was in middle school, Deputy Payne

screamed at Kevin Jones, the Bridge City Middle School Principal who intended to discipline Dakota Payne. Deputy Payne successfully intimidated Kevin Jones into not disciplining Dakota Payne. Cindy Landrum, another employee of the Middle School, witnessed these events. Further Deputy Payne insisted to the high school administrators that his son walk across the stage at graduation with his peers, even though Dakota Payne was ineligible. Deputy Payne expected and pressured the BCISD to make an exception to BCISD's Student Code of Conduct for his son at the expense of Plaintiff. Deputy Payne went to the school in his Sheriff's office uniform, and he used his power and authority improperly, thereby committing multiple acts of Abuse of Official Capacity, in violation of Texas Penal Code § 39.02. As described above, Defendant Deputy Payne also interfered with service of process of Clarke's Civil Temporary Restraining Order, and he actively participated in creating a progressively hostile environment for Plaintiff. All such misconduct by Defendant Deputy Payne was in violation of Texas Penal Code § 39.02 and 39.03, Official Oppression,  which state: "(a)  A public servant acting under color of his office or employment commits an offense if he: (2)  intentionally denies or impedes another in the exercise or enjoyment

34

of any right, privilege, power, or immunity, knowing his conduct is unlawful." Further, Defendant Deputy Payne's misconduct outlined above violated Plaintiff's 1st Amendment freedom of association and movement rights, and her 5th Amendment Due Process rights.

40.    Additionally, Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Dakota Payne, Deputy Jonathan Payne, and the Orange County Sheriff's Office and the DA have all knowingly participated in all this misconduct set forth above in violation of her 5th Amendment Due Process rights, and her 14th Amendment Equal Protection rights.

## LIABILITY UNDER 42 USC § 1983

41.   Pursuant to 42 U.S.C. § 1983, Clarke has pled ample facts demonstrating that she is the victim of multiple, intentional Constitutional and clear statutory violations perpetrated by Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Dakota Payne, Deputy Jonathan D. Payne, and Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office). Further, Clarke has pled ample facts demonstrating that she is the victim of retaliation and official oppression by Defendants BCISD, Defendant Mike King, Individually, Defendant, Richard Briggs, Defendant

35

Deputy Jonathon D. Payne, and by Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office). Pursuant to the requirements of 42 U.S.C. §1983, Clarke has pled facts demonstrating an ongoing pattern of violations of her rights secured by the United States Constitution and by statutes. Clarke has also identified the actors of who performed and ratified these ongoing Constitutional and statutory violations performed by the individual Defendants and the entities BCISD and Orange County, acting under color of state law.

42.    A state actor is one acting "under color of any statute, ordinance, regulation, custom, or usage of any State..." 42 U.S.C. § 1983; Johnson v. Dallas Independent School District, 38 F. 3d 198, 200 (5 Cir. 1994), cert. denied, 514 U.S. 1017 (1995). Under this definition, the state actors are Defendants BCISD, Defendant Mike King, Defendant Richard Briggs, Defendant Deputy Jonathan D. Payne, and Orange County (for misconduct by the policy makers in the Orange County Sheriff Department and in the Orange County District Attorney's Office). The governmental entities are acting through these individual Defendants and as such have violated the statutory, civil and Constitutional rights of Mrs.

Clarke. Their combined actions, and the actions each has taken individually, are so numerous, regular and long-standing that they now constitute an official policy, custom, or practice of these governmental entities sufficient to impose monetary liability upon all Defendants for all the unlawful conduct against Mrs. Clarke at issue. Monell v. Dept. of Social Services of the City of NewYork, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).

43.     The Fifth Circuit interprets the Monell requirement of an official policy, custom or practice to "include persistent or widespread practices which, although not officially authorized, are 'so common and well settled as to constitute a custom that fairly represents [official] policy.'" Muldrow v. Berthot, No. 6:12 CV 460, 2012 W.L. 3991366 (E.D. Tex. 2012), citing Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995). A pattern of incidents with notice to the governmental entities can satisfy the applicable standards. See authority supra; see also Webster v. City of Houston, 735 F. 2d 838, 841 (5 Cir. 1984); Travis v. Texas Department of Criminal Justice, No. 3-06-CV-1854 M, 2006 W.L. 3831221, at 2 (N.D. Tex. 2006).

44.     Plaintiff will demonstrate that Orange County has actual

knowledge of the acts and omissions of Defendant Deputy Jonathan D. Payne. Plaintiff's husband, Paul Clarke, met with Sheriff Merritt of the Orange County Sheriff's Department. Mr. Clarke informed Merritt about the events involving the interference and intentional harm perpetrated by Defendant Deputy Jonathan D. Payne. At this meeting, Mr. Clarke provided the Orange County Sheriff's Department with video evidence of the events, providing Defendant Orange County with actual knowledge of the actions of Defendant Deputy Jonathan Payne. Defendant BCISD also has actual knowledge of the unlawful acts and omissions of Defendants Mike King, Richard Briggs, and Keith Jones. When Plaintiff filed her grievance in accordance with BCISD policy, she filed a Level I and II grievance requiring that a copy be provided to BCISD administration through Defendant Mike King. Therefore, Defendant BCISD had actual knowledge of the actions of the individual Defendants. The governmental entities, Orange County and BCISD, had knowledge, both actual and constructive, that Defendants, acting individually and with the cooperation and actions of the other individual Defendants, have consistently engaged in ongoing Constitutional and Texas Penal Code violations, that include the deprivation of Clarke's civil and Constitutional

rights under color of state law, intentional violation of Clarke's statutory and common law rights, as well as entering into agreements with others to violate the civil, Constitutional and statutory rights of Plaintiff. Also, the Orange County DA participated in this overall scheme of misconduct, which further implicates Orange County.

45.    The Defendants Mike King, Richard Briggs, Keith Jones, and Deputy Jonathan Payne may assert the defense of Qualified Immunity. Plaintiff will address this possible defense without conceding the individual Defendants qualify for this defense under controlling law. Under this defense, the essential legal inquiry is: (1) whether these individuals acted in good faith toward Clarke and with due regard for the laws and the Constitution of the United States and Texas; and (2) whether the legal and Constitutional standards were established and well-known by these Defendants  when these events occurred. Stated another way, inquiry is whether these Defendants violated known Constitutional, statutory standards, TEA guidelines, and BCISD's policies and procedures of which they were or should have been aware. Plaintiff has pled ample facts demonstrating that these Defendants (1) were aware of the applicable standards, but they (2) violated these standards repeatedly.

Clarke has been the victim of malicious and willful misconduct by these Defendants that violated clear Constitutional, statutory, administrative, and common law duties imposed upon these individual Defendants. Further, the legal and Constitutional standards which these Defendants violated are clear and well-known to them. These facts defeat the defense of qualified immunity for these Defendants. See Wilson v. Layne, 526 U.S. 603, 609 (1999). That is, these Defendants have intentionally violated Constitutional, statutory, administrative, and common law duties that they owed to Clarke. By their misconduct toward Clarke, Defendants willingly refused to follow their oaths and duties to support and defend the laws and Constitutions of the United States and Texas, and all applicable laws and statutes. The Defendants Mike King, Richard Briggs, Keith Jones, and Deputy Jonathan Payne, are not entitled to qualified immunity.

46.    Likewise, Defendants BCISD and Orange County, also had actual knowledge that the individual Defendants have egregiously and maliciously violated Clarke's Constitutional, statutory, administrative, and common law rights. The individual Defendants have gone without consequences for their egregious actions against Plaintiff with the willful

consent of Defendants BCISD and Orange County, thereby empowering and enabling the Individual Defendants to engage in further intentional, unconstitutional and tortious actions. The harm caused to Plaintiff with knowledge of Defendants BCISD and Orange County constitutes acquiescence and ratification by the BCISD and Orange County of the Individual Defendants' unconstitutional and unlawful conduct toward Clarke. Therefore, there is a custom or policy of these governmental entities to support these unconstitutional actions, the statutory and administrative violations, and the tortious actions of these Defendants against Clarke.

## CAUSES OF ACTION AND DAMAGE CLAIMS

A) Damage Claims Under 42 USC § 1983

47.    Plaintiff Jennifer Clarke asserts this lawsuit against all Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan Payne, and Orange County pursuant to 42 U.S.C. § 1983 and for numerous pendent state law claims. Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan D. Payne, and Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office), are all governmental actors, or

agencies, or entities, which have deliberately violated the Constitutional, statutory, administrative, or common law rights of the Plaintiff in numerous respects, pursuant to an ongoing custom, practice and standard operating procedure of the BCISD and Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office). The complicity, ratification and facilitation of the individual Defendants' misconduct, including Defendant Dakota Payne, actionable misconduct by the BCISD and Orange County are so wide-spread and persistent that these wrongful actions constitute a custom that fairly represents official policy of the BCISD and Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office). The Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan Payne, and Orange County have acted jointly, with a unity of purpose and with collective action, justifying the imposition of joint and several liability against these Defendants. The Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan Payne, and Orange County have proximately caused Clarke substantial compensatory or actual damages.

48.   Pursuant to § 1983, Plaintiff seeks to recover against The

Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan Payne, and Orange County all of Clarke's compensatory or actual damages for all her economic and non-economic harm that have been caused by these ongoing violations of § 1983. Clarke's damages are her financial or economic losses in the past, present and future, that include, but are not limited to loss of income, loss of benefits, and other economic losses to be demonstrated at the time of trial. Clarke also seeks to recover against these Defendants jointly and severally all her non-economic losses for her mental anguish, fear, terror, humiliation, and loss of enjoyment of life in the past, present and future. Plaintiff seeks to recover $200,000 for her past, present and future compensatory damages from Defendant Briggs, individually; $200,000.00 for these same past, present and future compensatory damages from Defendant Jones, individually; $200,000.00 for these same past, present and future compensatory damages from Defendant King, individually; $200,000.00 for these same past, present and future compensatory damages from Defendant Deputy Jonathan D. Payne, individually; $200,000.00 for these same past, present and future compensatory damages from Defendant Orange County (for the misconduct by the Orange County Sheriff

43

Department and the Orange County District Attorney's Office); and $200,000.00 for these same past, present and future compensatory damages from Defendant BCISD. These Defendants have acted jointly, with a coherent and consistent plan to intentionally violate Mrs. Clarke's Constitutional, statutory, administrative, and common law rights, and to cause her maximum harm and damage through a collective effort. Plaintiff, therefore, seeks the imposition of joint and several liability against each and all of these Defendants.

49.    Section 1983 also authorizes the recovery of punitive or exemplary damages against state or local officials in their individual capacity, for conduct that the fact-finder finds to be malicious, intentional, reckless or callously indifferent to a plaintiff's constitutional rights. Smith v. Wade, 461 U.S. 30 (1983). In order to recover punitive or exemplary damages, the jury need not find the conduct at issue was "outrageous" or "extraordinary," even though the Defendants' intentional misconduct certainly qualifies as outrageous and extraordinary. Id.; Kolstad v. American Dental Ass'n, 527 U.S. 526, 535-36 (1999). Based upon these standards, Clarke seeks the imposition of punitive or exemplary damages against Defendants BCISD, Defendant Mike King, Defendant Richard

44

Briggs, and Defendant Deputy Jonathan D. Payne, and Defendant Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office), in an amount to be set by the jury to punish each wrongdoer fully and to deter any future misconduct by any of these Defendants. The breach of public trust and blatant misuse of power by Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Deputy Jonathan Payne, and Orange County (for the misconduct by the Orange County Sheriff Department and the Orange County District Attorney's Office), against Clarke and others merit a strong punitive response.

B) Pendent State Law Claims

50.   Plaintiff also sues the Defendants BCISD, Mike King, Richard Briggs, Keith Jones, Dakota Payne, Deputy Jonathan Payne, and Orange County for negligence and gross negligence in failing to follow the laws and Constitution in the particulars set forth in this Complaint, and failure to control their own behavior toward Clarke. These Defendants had legal duties to Plaintiff described above via statute, the U.S. and Texas Constitutions, and common law, and these Defendants breached these legal duties.

51.    The negligence and gross negligence of all of the Defendants have proximately caused actual harm or compensatory damages to Clarke. Defendants BCISD, Mike King, Richard Briggs, and Keith Jones were grossly negligent by failing to uphold and follow the constitutional, statutory, and administrative standard of behavior as well as the Texas Education Code's guidelines which provides mandatory guidelines for an administration in these situations. These Defendants had (1) a duty toward Clarke to conduct themselves properly; (2) a duty to secure the integrity of the educational environment; (3) a duty to remove threatening people from the regular environment to remove the risk to educators and students; and (4) a duty to provide Clarke with a safe and harassment-free work environment. The Defendants BCISD, Mike King, Richard Briggs, and Keith Jones and Orange County repeatedly breached these duties.

52.    The tortious conduct of the Defendants also constitute negligence and gross negligence per se by violating: (1) Clarke's civil rights under 18 U.S.C. § 241, Texas Constitution, Article 1, Section 1, Bill of Rights, Sub Section 30 (a) (1) and (b)(1)(3), 30(b)(1)(5), Texas Gov't Code 552.101, 552.352(2), Texas Transportation Code 545.462, Texas Penal Codes § 1.07, 22.07, 36.05, 36.06, 37.09, 38.16, 39.02, 39.03, Texas Education Codes §

37.001, 37.006, 37.008; and (2) Clarke's civil rights under color of state law, in violation of 18 U.S.C. § 242. All these actions by Defendants have proximately caused Mrs. Clarke actual or compensatory damages, as set forth and enumerated above. Further, these Texas state law torts have been perpetrated by Defendants maliciously and with a specific intent to harm Clarke, justifying the imposition of punitive or exemplary damages against each and every Defendant in an amount set forth above. Clarke seeks to hold the individual Defendants individually liable for all of Clarke's compensatory or actual damages proximately caused by their negligence and gross negligence per se.

53.    Additionally, Mrs. Clarke sues Defendants BCISD, Defendant Mike King Individually, Defendant Richard Briggs, Individually, and Defendant Keith Jones, Individually, jointly and severally, for the pendent Texas state torts of tortious interference with business relationships, defamation and defamation per se, and intentional infliction of emotional distress by acting in an extreme and outrageous manner.  These Texas state law torts were perpetrated by these Defendants jointly and severally through common and joint action undertaken by them against Clarke. Their wrongful actions proximately caused Clarke actual or compensatory

damages, as set forth above.

54.    Plaintiff also sues Defendants Dakota Payne and Deputy Jonathan Payne for their extreme and outrageous conduct and their intentional infliction of emotional distress upon Clarke, all of which have proximately caused Plaintiff actual or compensatory damages as set forth above. Further, these Texas state law torts have been perpetrated by these Defendants maliciously and with a specific intent to harm Mrs. Clarke, justifying the imposition of punitive or exemplary damages against these two Defendants in amounts to be set forth by the jury. Plaintiff, therefore, seeks recovery of her compensatory damages and the imposition of punitive or exemplary damages against these Defendants' for their tortious misconduct.

## ATTORNEYS' FEES, COSTS AND EXPENSES

55.    Clarke seeks to recover all her attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1983. Plaintiff has employed Undersigned Counsel, who is Board Certified by the Texas Board of Legal Specialization in Civil Trial Law. Plaintiff has retained the Morgan Law Firm on a standard 40% contingent fee basis, plus recoupment of all the Morgan Law Firm's costs and expenses incurred in prosecuting this cause

48

of action. Pursuant to the Lodestar methodology, Plaintiff shall provide proof of attorneys' fees and expenses itemized on an hourly basis, at the rate of $450.00 per hour. Plaintiff anticipates that hourly attorneys' fees, costs and expenses incurred through a trial of this case could reasonably reach $350,000.00 or more. For making or responding to any necessary appeal to the United States Court of Appeals for the Fifth Circuit, Plaintiff seeks attorneys' fees, costs and expenses in the amount of $75,000.00 for the initial appellate brief and oral argument, and $35,000.00 for any necessary motions for rehearing or rehearing en banc, conditioned upon success on appeal. Further, for making or responding to a Petition for Certiorari to the United States Supreme Court, Plaintiff seeks an additional $75,000.00, conditioned upon success before the United States Supreme Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein. Plaintiff requests that she obtain a Judgment against all Defendants jointly and severally, and that Plaintiff recovers from all Defendants jointly and severally her compensatory damages. Plaintiff requests that she also recover punitive or exemplary damages in the jury's discretion against all Defendants,

jointly and severally. Plaintiff also requests that she recovers all her reasonable and necessary attorneys' fees, court costs and expenses. Finally, Plaintiff requests such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

/s/ John S. Morgan
JOHN S. MORGAN
TBA#14447475
Morgan Law Firm
2175 North Street, Suite 101
Beaumont, Texas 77701
(409) 239-5984
(409) 835-2757 facsimile
Attorney for Plaintiff

JURY DEMAND

Plaintiff herein hereby requests a trial by jury.

/s/ John S. Morgan
JOHN S. MORGAN